UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DONALD E. CARLING,<br><br>               Plaintiff,<br><br>vs.<br><br>ANN M. VENEMAN, Secretary<br>Department of Agriculture,<br><br>               Defendant. | Case No. 3:04-cv-00211-JKS<br><br>MEMORANDUM DECISION<br>[Re: Motion at Docket No. 17] |

## I. MOTION PRESENTED

At Docket No. 17 defendant Ann M. Veneman, Secretary of Agriculture ("the Secretary") has moved for summary judgment. Plaintiff Donald E. Carling ("Carling") has opposed the motion. The court having reviewed the moving papers and opposition has determined that oral argument would not assist in determining the motion.

## II. BACKGROUND/FACTS

Dr. Carling brought this action alleging that in declining to hire him for two separate positions for which he applied the Agricultural Research Service ("ARS") of the Department of Agriculture discriminated against him in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq* ("ADEA").

In May 4, 2003, Dr. Carling was employed as a career conditional (probationary) employee as a physiologist by ARS at its facility in Palmer.[1] His immediate supervisor in that position was Dr. Alberto Pantoja. On October 3, 2003, by letter, Dr. Pantoja terminated Dr. Carling's employment, stating as the reason for termination:[2]

---

[1] Docket No. 17, Defendant's Motion for Summary Judgment, Exh. G.

[2] *Id.*, Exh. J.

> On May 4, 2003, you were hired by ARS on a Career-Conditional Appointment as part of a Demonstration Project established under 5 U.S.C. 4703. This appointment is subject to a 3-year probationary period. Recently you have been unresponsive to phone calls and e-mails. The quality of the research plans you have presented so far have been unacceptable. In addition, you do not coordinate work or initiatives with other units through the administrative office as instructed. Your lack of response to urgent matters has caused major delays to our unit, the Area Office and the National Program Staff. On September 22 and 23, 2003, I indicated to you that your research plan was unacceptable. I called and left e-mails and voice messages regarding the need and urgency of a reviewed prospectus. During a phone conversation at 10:10 a.m. on September 23, 2003, I explained to you the need to have a reviewed version to me by the end of the day. You did not provide the reviewed version as requested, but instead went to the field to collect devil's club germplasm.
>
> Based on the above, you are being terminated from your position and from the rolls of the Federal Government.

On November 5, 2003, Dr. Carling appealed the termination decision to the Merit Systems Protection Board ("MSPB"). In his MSPB complaint Dr. Carling alleged:[3]

> The agency has no legitimate cause to terminate me. The allegations listed in the letter of termination are, with minor exceptions, untrue. No formal indication was given that my performance or behavior was unsatisfactory. After receipt of the termination letter on 10-03–03, I was given no opportunity by the agency to challenge or rebut the claims against me.

On January 13, 2004, the Administrative Law Judge entered an order dismissing the MSPB complaint for lack of jurisdiction, which order became final February 17, 2004.[4] Dr. Carling did not seek judicial review of that decision.

On December 4, 2003, Dr. Carling submitted an application for a position with ARS as a Research Plant Pathologist located in Fairbanks using his old resume, which did not include the fact of his prior employment by ARS.[5] From a list of seven eligible candidates, including Dr.

---

[3] Docket No. 3, Defendant's Motion to Dismiss Count Two for Lack of Jurisdiction, Exh. C, page 5 (the original is in all uppercase letters).

[4] *Id.*, Exh. D.

[5] Docket No. 17, Defendant's Motion for Summary Judgment, Exh. C.

Carling,[6] Dr. Pantoja selected three candidates for interview, not including Dr. Carling.[7] On or about February 12, 2004, another applicant, Loretta Winton, was selected for the position,[8] and Dr. Carling was notified that another candidate had been selected for the position.[9]

On January 5, 2004, ARS advertised for a Research Geneticist/Plant Physiologist in Palmer at the GS-12/13/14 levels.[10] On February 16, 2004, Dr. Carling applied for the position, submitting his old resume, which, like his application for the Fairbanks position, did not include the fact of his prior employment by ARS.[11] Dr. Pantoja did not select Dr. Carling for interview and both candidates selected declined.[12] The position was advertised again July 6, 2004,[13] and re-advertised November 4, 2004.[14] Dr. Carling was included in the eligible list.[15] Following the third advertisement of the opening, the applications were reviewed by a committee of eight individuals chaired by Dr. Pantoja.[16] This committee selected three candidates to interview, but did not select Dr. Carling.[17] The position was offered to and accepted by Dr. Joseph Kuhl, 34, a geneticist, at the GS-12 level.[18]

---

[6] *Id.*, Exh. V.

[7] *Id.*, Exh Y, ¶ 5.

[8] *Id.*, Exh. V.

[9] *Id.*, Exh. C.

[10] *Id.*, Exh. M.

[11] *Id.*, Exh. N.

[12] *Id.*, Exh. P. The date that this action occurred is unclear. However, the precise date does not appear to be relevant to the issues before the Court so the Court will assume it occurred in June 2004 as the close date on the announcement was June 25, 2004 and the re-advertisement initiated July 6, 2004.

[13] *Id.*, Exh. Q.

[14] *Id.*, Exh. O.

[15] *Id.*

[16] *Id.*, Exh. S.

[17] *Id.*, Exh. R.

[18] *Id.*, Exh. R, Y.

Although Dr. Carling did not file an age-discrimination complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"),[19] Dr. Carling gave notice to the EEOC of his intent to file the instant lawsuit July 29, 2004.[20] On September 16, 2004, Dr. Carling filed his complaint initiating this action. His action in this Court alleges a violation of the ADEA arising out of the actions of the Agency in declining to employ him for the two positions for which he applied: the Plant Pathology position in Fairbanks and the Plant Physiology position in Palmer.

### III.  JURISDICTION

In his complaint Dr. Carling alleges that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(4) and 29 U.S.C. § 626(c)(1). Neither of these provisions provide a basis for this court to exercise jurisdiction in this case.[21] Dr. Carling further alleges in ¶ 12 that he "has complied with the requirements of 29 U.S.C. § 633a(d) and has performed all conditions precedent to the maintenance of this action." In her answer, the Secretary raised the question of whether Dr. Carling had, in fact, complied with the requirements of § 633a(d).[22]

---

[19] While he could have sought relief via the EEOC administrative process, 29 U.S.C. § 633a(b), he was not required to do so before proceeding in this Court. *Stevens v. Dept. of Treasury*, 500 U.S. 1, 5–6 (1991); *Bankston v. White*, 345 F.3d 768, 770 (9th Cir. 2003).

[20] Docket No. 34, Defendant's Response to Order at Docket 32 Regarding Jurisdiction, Exh. A.

[21] First, 29 U.S.C. § 633a(f) expressly limits the applicability of the other provisions of the ADEA to federal agencies to § 631(b). Thus, jurisdiction can not be based on § 626(c)(1). Second, "28 U.S.C. § 1343 does not create an independent basis for federal jurisdiction, but only serves to confer jurisdiction where a federal cause of action is provided by one of the substantive sections of the Civil Rights Act." *Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980). In addition, the express language of § 1343(a)(4) requires that commencement of the action be authorized by law other than that section. Thus, in order to invoke the jurisdiction under § 1343, some other provision of law must authorize it. Whether plaintiff is authorized to commence this action must, therefore, be determined by reference to the applicable provisions of the ADEA.

[22] 29 U.S.C. § 633a provides in relevant part:

(c) **Civil actions; jurisdiction; relief**

Any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter.

(d) **Notice to Commission; time of notice; Commission notification of prospective defendants; Commission elimination of unlawful practices**

(continued...)

At Docket No. 32 the Court, *sua sponte*, ordered Dr. Carling to provide evidence supporting the basis for the jurisdiction of this Court, in particular that he had complied with the requirements of § 633a(d).  At Docket No. 33 Dr. Carling filed his response incorrectly asserting that the appeal to the MSPB satisfied the question of this Court's jurisdiction; as the Secretary's response aptly states,[23] it "missed the mark."  Fortunately for Dr. Carling, the Secretary provided evidence that the provisions of § 633a(d) had, in fact, been satisfied, *i.e.*, within 180 days of the alleged unlawful action the EEOC was provided notice of intent to sue and more than 30 days lapsed before the suit was filed. *Stevens v. Dept. of Treasury*, 500 U.S. 1, 5–6 (1991).

This Court has jurisdiction over the acts alleged in the First Cause of Action of the Complaint under 28 U.S.C. §§ 1331 and 1343(a)(4), and 29 U.S.C. § 633a(c).

## IV.  ISSUES PRESENTED

Did the actions of ARS in declining to employ Dr. Carling for the Fairbanks position in February 2004 or the Palmer position in June 2004 constitute discrimination on account of age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.*[24]

---

[22]/(...continued)
When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred. Upon receiving a notice of intent to sue, the Commission shall promptly notify all persons named therein as prospective defendants in the action and take any appropriate action to assure the elimination of any unlawful practice.

[23]/ Docket No. 34, Defendant's Response to Order at Docket 32 Regarding Jurisdiction.

[24]/ 29 U.S.C. § 633a provides:

(a) **Federal agencies affected**
All personnel actions affecting employees or applicants for employment who are at least 40 years of age (except personnel actions with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units in the government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the

(continued...)

Not at issue are either: (1) the propriety/legality of the October 2003 termination or (2) the process involved in the re-advertisement of the Palmer position culminating in the selection of Dr. Kuhl. Dr. Carling did not give the required notice of an intent to sue nor did he challenge the termination action in his complaint,[25] and the process that culminated in the hiring of Dr. Kuhl occurred subsequent to the initiation of the instant lawsuit. Neither is properly before the Court, nor does the Court have subject matter jurisdiction over either.

## V. STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the moving party is entitled to judgment in its favor as a matter of law. FED. R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986). In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002). The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of

---

[24]/(...continued)
Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on age.

29 U.S.C. § 631(b) provides:

(b) **Employees or applicants for employment in Federal Government**

In the case of any personnel action affecting employees or applicants for employment which is subject to the provisions of section 633a of this title, the prohibitions established in section 633a of this title shall be limited to individuals who are at least 40 years of age.

[25]/ Even if this court were able to somehow characterize the case at bar as an appeal from the dismissal of a "mixed case" by the MSPB, not only would it be untimely, *see* 5 U.S.C. § 7703(b)(2) (the time to appeal under § 633a(c) is 30 days), but this Court would not have jurisdiction in any event. 28 U.S.C. § 1295(a)(9); *Sloan v. West*, 140 F.3d 1255, 1261–1262 (9th Cir. 1998) (holding that where a "mixed case" brought before the MSPB is dismissed for lack of jurisdiction, the Federal Circuit is the exclusive appellate forum).

the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a fact-finder to resolve the parties' differing versions of the truth at trial.  There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

V.  DISCUSSION

The law applicable to discrimination cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, applies generally as well to age discrimination cases under the ADEA. *See Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 916 (9th Cir.1997).  In order to assert a valid Title VII discrimination claim, a plaintiff must make out a *prima facie* case establishing that the challenged employment action was either intentionally discriminatory or that it had a discriminatory effect with respect to a protected class. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Harriss v. Pan Am. World Airways, Inc.,* 649 F.2d 670, 673 (9th Cir.1980).  First, the Court notes that this case presents a case of an one-time disparate treatment of a particular employee, not a disparate impact of a general policy, by reason age.  Dr. Carling has neither alleged nor introduced any evidence that either the Secretary or the hiring official in this case, Dr. Pantoja, generally or usually base employment decisions upon age or that the hiring policies of the agency treat older workers less favorably than younger.  Thus, this Court must decide the motion at bar based upon the facts applicable to the case, *i.e.*, whether the adverse employment action was discriminatory as to Dr. Carling.

Under that framework, the burden of production first falls on Dr. Carling to make out a *prima facie* case of discrimination.  He may do so by showing that (1) he belongs to a protected class, (2) he applied for and was qualified for the position, (3) that despite his qualifications, he was rejected, and (4) after his rejection, the position remained open and the employer continued to seek applicants. *McDonald Douglas Corp., supra.*  "The requisite degree of proof to establish a prima facie case is minimal; plaintiff need only offer evidence giving rise to an inference of unlawful discrimination." *Messick v. Horizon Industries, Inc.,* 62 F.3d 1227, 1229 (9th Cir. 1995) (citation omitted).

Once a plaintiff establishes a *prima facie* case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell,* 411 U.S. at 802. If the defendant meets that burden, plaintiff must show that the reason was merely a pretext for intentional discrimination. *Tex. Dep't. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). The Ninth Circuit recently reviewed these principles in *Lindsey v. SLT Los Angeles LLC*, 432 F.23d 954, 962–63 (9th Cir. 2005).

> Once a defendant presents legitimate non-discriminatory reasons, the presumption of discrimination "drops out of the picture," and the plaintiff has the new burden of proving that the proffered reasons were a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510-11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang,* 225 F.3d at 1127 (citation omitted). Although the inference of discrimination created from the *prima facie* case is gone, the evidence used in its establishment may be considered for examining pretext. *Id.* (citing *Reeves,* 530 U.S. at 146-47, 120 S.Ct. 2097) ("A disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons."); *see also Lowe v. City of Monrovia,* 775 F.2d 998, 1009 (9th Cir.1985), *amended by* 784 F.2d 1407 (1986) ("Once a *prima facie* case is established either by the introduction of actual evidence or reliance on the *McDonnell Douglas* presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the 'elusive factual question of intentional discrimination.' " (citation omitted)).
>
> Nevertheless, "when evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate, even though [the] plaintiff may have established a minimal *prima facie* case based on a *McDonnell Douglas* type presumption." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890–91 (9th Cir.1994).

The Court must apply these principles to the alleged age discrimination claim in the case at bar.

Dr. Carling is clearly in the protected class, *i.e.*, over the age of 40. However, whether the person to whom Dr. Carling lost out was also in the protected class or not is irrelevant to his age discrimination claim if he lost out because of his age. *O'Connor v. Consolidated Coin Caterer's Corp*, 517 U.S. 308, 312 (1996). Thus, as the Secretary candidly acknowledges, Dr. Carling has established a *prima facie* case of age discrimination in that: (1) he is a member of a

protected class (over age 40); (2) he was qualified for the position; (3) he was not hired for the position; and (4) the agency continued to seek applicants for the position after Dr. Carling was rejected or was filled by a similarly qualified candidate who was substantially younger than Dr. Carling, whether within or outside the protected class.

Unfortunately, the parties spend an inordinate effort in discussing the two events that are not at issue: the October 2003 termination and the February 2005 hiring of Dr. Joseph Kuhl. What is at issue is whether or not ARS declined to hire Dr. Carling to fill the Fairbanks position in February 2004 or the Palmer Position in June 2004 because of his age. As noted above, and acknowledged by the Secretary, Dr. Carling has presented a *prima facie* case. Thus the burden shifts to the Secretary to show a legitimate non-discriminatory basis for the action.

With respect to the Fairbanks position, Dr. Pantoja states in his Declaration:[26]

5. For the selection for the Plant Pathologist in Fairbanks, Alaska, I selected the top three candidates for interview. I did not select Dr. Carling because I had just terminated him for the reasons stated in the termination letter. I was not concerned about any scientist's age. I was concerned about past performance and research skills. I had worked with Dr. Carling and I was unhappy with his inability to keep me informed and to focus on his research project. In addition, the other candidates, Dr. Davelos and Dr. Winton had proven abilities to do research on the molecular level, which Dr. Carling lacked.

6. Before writing the termination letter, I presented my concerns to the Area Office in Albany California and to Human Resource s [*sic*] Division, Employee Relationships, and National Program Staff. I wrote the chronology of events to illustrate my interactions with Dr. Carling. (Ex. K). I attached copies of e-mails to verify the events. I was unhappy with Dr. Carling's inability to work through me as the lead scientist for the project and Research leader when communicating with outside facilities. He also failed to get approval from me before arranging for travel. Most importantly, his section of the research prospectus which would guide the ARS Palmer research project for the next few years was not accepted by Area Office and the National Program Staff. It appeared to me that Dr. Carling did not focus on this very important prospectus and did not timely make revisions. I received permission from the Area Office and the Human Resources Division to terminate Dr. Carling while he was still a probationary employee.

---

[26] Docket No. 17, Defendant's Motion for Summary Judgment, Exh. Y.

In response, Dr. Carling attacks the decision of Dr. Pantoja to terminate him in October 2003. According to Dr. Carling, that decision was flawed in that the reasons for it were fallacious. His opposition challenges the reasons given for his termination. The Secretary, in turn, counters with evidence that tends to support the reasons for the termination. The submissions by the parties *may* raise a triable issue of fact as to validity of the October 2003 termination, *if that were properly before the court, which it most decidedly is not*. The evidence is clear that Dr. Pantoja, his immediate supervisor, was "unhappy" with Dr. Carling's performance during his previous employment with ARS. In particular, Dr. Pantoja was concerned with the ability of Dr. Carling to timely follow directions, keep Dr. Pantoja informed, and in focusing on the research projects assigned to him. Dr. Pantoja's action in terminating Dr. Carling was unquestionably "legitimate," *i.e.*, it complied with the law.[27]

Dr. Carling's opposition focuses on an attempt to establish that the proffered reason is fallacious. The Court has mined the record without success for evidence that Dr. Pantoja's assessment was substantially or significantly fallacious.[28] What Dr. Carling fails to do is establish that, based upon the facts, Dr. Pantoja's subjective assessment was objectively unreasonable or that it is unworthy of credence. *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. at 256; *Chuang v. Univ. of Cal. Davis*, 255 F.3d 1115, 1124 (9th Cir. 2000). Moreover, a plaintiff must show "*both* that the reason was false *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in the original). A

---

[27] Congress has seen fit to confer limited protection from arbitrary termination on probationary federal employees by limiting the right to challenge such action. A probationary employee has no statutory right to challenge termination. *See* 5 U.S.C. § 7511(a). Such an employee does, however, have a regulatory right to challenge termination. 5 C.F.R. § 315.806. However, this right is limited to a termination based upon political reason or marital status, or not effected in accordance with the employee's procedural rights. *Id*. As a probationary employee terminated for unsatisfactory performance, Dr. Carling was only entitled to receive written notice of his termination giving an effective date and the conclusions as to the adequacies of his employment. 5 C.F.R. § 315.804. As the MSPB found in dismissing Dr. Carling's complaint, ARS met these requirements.

[28] In his declaration, Dr. Carling offers evidence that his contact with the University of Alaska concerning *emeritus* status did not violate policy and could not support his termination. However, the termination letter makes no reference to this incident, it is simply one of several items, some significant, some not, contained in a synopsis prepared by Dr. Pantoja. Dr. Carling offers nothing to refute the statements in the termination letter other than that, with minor exceptions, he disagrees with them.

plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action. *See Wallis v. J.R. Simplot,* 26 F.3d 885, 890 (9th Cir. 1994); *Schuler v. Chronicle Broad. Co.,* 793 F.2d 1010, 1011 (9th Cir. 1986).  Nor may a plaintiff create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted. *See Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir.1996) (concluding, despite the plaintiff's claims that she had performed her job well, that "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact").

*St Mary's* makes clear that once a defendant has articulated a legitimate non-discriminatory basis for its action, the presumption created by the facts establishing the *prima facie* case disappears and the burden shifts back to the plaintiff to establish that discrimination was the real reason.  There is not one scintilla of evidence, direct or circumstantial, that tends to support a finding that the reason Dr. Carling was not hired for the Fairbanks position was based upon his age.  Dr. Carling offers only his subjective view that because he could think of no other reason, that had to be the reason.  This is insufficient.  In ruling on a motion for summary judgment, the court is not required to draw all possible inferences in favor of the nonmovant, only all reasonable ones. *See O.S.C. Corp. v. Apple Computer Inc.*, 792 F.2d 1464, 1466–1467 (9th Cir. 1986).  Based on this record, the Court can not say that a reasonable mind could find that Dr. Carling was not hired for the Fairbanks position because of his age.

With respect to the failure to hire Dr. Carling for the Palmer position, the evidentiary state is substantially different.  Both parties focus on process and decision to hire Dr. Joseph Buhl for the position.  The Secretary argues that (1) the decision was made by a panel and (2) Dr. Joseph Buhl was more qualified for the position.  Dr. Carling argues that Dr. Pantoja dominated the panel causing it to select his favored candidate, Dr. Buhl.  But, as noted above and the Secretary appears to acknowledge, the hiring of Dr. Buhl is not at issue.  What is at issue with respect to the Palmer position is the decision not to interview Dr. Carling as a result of the January 2004 advertisement for the position and offer the position to two other candidates who

declined.[29]  The Secretary offers no evidence whatsoever for the reason Dr. Pantoja did not interview Dr. Carling for the Palmer position during process that followed the initial advertisement in January 2004.  The law is clear that once the plaintiff establishes a *prima facie* case of age discrimination, the burden shifts to the defendant to introduce some *evidence* of a legitimate non-discriminatory reason for the adverse employment action. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. at 255.  While the Court may surmise that the same reasons applied to the action taken on the Palmer application as was taken on the nearly contemporaneous action taken on the Fairbanks application, surmise, conjecture or speculation do not amount to evidence sufficient to warrant granting summary judgment.  At this juncture, with respect to the failure to hire Dr. Carling for the Palmer position, the record supports solely the *prima facie* case the Secretary acknowledges Dr. Carling has established.  Dr. Carling has met his initial burden of proof; the Secretary has not met hers.

Although the *prima facie* case established by Dr. Carling is weak and the record before this Court indicates it is highly unlikely Dr. Carling can prevail at trial, it would be inappropriate for the Court to grant summary judgment in favor of the Secretary on the failure to hire Dr. Carling for the Palmer position.

## VI.  CONCLUSION

Based upon the foregoing, Defendant's Motion for Summary Judgment at Docket No. 17 is GRANTED, in part, and DENIED, in part.

Dated this 5th day of July, 2006.

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[29] Dr. Buhl was not even an applicant for the position at that time.