DEBORAH M. SMITH
Acting United States Attorney

SUSAN LINDQUIST
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska  99513-7567
Telephone: (907) 271-5071
Facsimile: (907) 271-2344
susan.lindquist@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DONALD E. CARLING,<br><br>     Plaintiff,<br><br>v.<br><br>ANN M. VENEMAN, Secretary, Department of Agriculture<br><br>     Defendant. | Case No. 3:04-cv-00211-JKS<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE PALMER SELECTION** |

   Ann Veneman, the Secretary of the Department of Agriculture, through counsel, moves pursuant to Fed. R. Civ. P. 56 for summary judgment.  Donald Carling ("Dr. Carling") claims that Alberto Pantoja ("Dr. Pantoja") of the Agricultural Research Service ("ARS") did not interview him or hire him for a research position in Palmer, Alaska, because of his age.  Dr. Pantoja had just

terminated Dr. Carling from the same position for which a new employee was sought. Dr. Carling's age played no role in Dr. Pantoja's decision.

## FACTS

After Dr. Pantoja terminated Dr. Carling in October, ARS advertised the same position with number ARS-X4W-0133. Ex. AA. The vacancy announcement sought a Research Geneticist/Plant Physiologist and stated that the "focus of the program is on plant germplasm[1] adapted to arctic and subarctic conditions with an emphasis on potatoes and other cereal and vegetable crops." Ex. AA at 1. The specialized skills required were "1. Skill in genetic, biochemical or plant physiology research techniques, methods or procedures involved in the genetics associated with environmental stress or detection and elimination of phytopathogens." Ex. AA at 1. Another skill was "2. Ability to apply, adapt, or modify plant genetic, plant physiology or phytopathological research techniques, methods or procedures used to solve complex research problems." Ex. AA at 2.

Ten candidates were eligible for the position. Ex. BB. Dr. Pantoja received the applications and selected three candidates for interview. Ex. CC at 1. All

---

[1] Germplasm is "the substance in germ cells by which hereditary characteristics are believed to be transmitted." Germ is defined as "1. In biology, the primitive rudimentary or embryonic form of an organism. . . ." Webster's New Universal Unabridged Dictionary, 1979 at 767.

three candidates selected for interview, Drs. Darrin Haagenson, Scott Kuersten, and Ivan Mott, had experience in genomics (molecular genetics), and some other candidates had patents and international experience. Ex. CC at 1-2.

Dr. Haagenson had a Ph.D. in agronomy (crop physiology and ecology). Ex. DD. He had investigated the molecular and chemical changes in plants and had worked on the genetic factors affecting sugar accumulation in beets. Ex. CC. Dr. Kuersten had a Ph.D. in molecular, cellular and developmental biology. Ex. EE. When he applied he was working in a laboratory of genetics and he was researching the genetic and molecular basis of nematodes. Ex. CC. Dr. Mott had a Ph.D. in genetics and he was already working for ARS in Utah. Ex. FF. All three had experience exploring the molecular genetics of plants.

Ultimately, Drs. Haagenson and Kuersten were selected for the position, but they declined the offer and the position was re-advertised at a later date. Docket 35 at 3.

## STANDARD OF REVIEW

The Standard of Review is set out in the Court's Order at 6.

# ANALYSIS

## I. DR. PANTOJA DID NOT SELECT DR. CARLING FOR AN INTERVIEW BECAUSE HE HAD JUST FIRED HIM FROM THE SAME POSITION IN PALMER, AND HE WAS NOT AMONG THE MOST QUALIFIED CANDIDATES

Age discrimination claims are analyzed utilizing the McDonnell-Douglas framework as set out i the Court's order. Docket 35 at 7. ARS admits that Dr. Carling has made out a prima facie case of age discrimination. Docket 35 at 8. To rebut the presumption of discrimination, ARS must present a legitimate, nondiscriminatory reason for its decision not to interview or select Dr. Carling for the position advertised in January and February of 2004. Docket 35 at 8.

Dr. Pantoja did not select Dr. Carling for an interview for the Palmer physiology/geneticist position for the same reason he did not select him for a position for the Fairbanks' pathology slot. Dr. Carling was terminated in October and a few months later he applied for his old job back in February 2004. Dr. Pantoja did not want to hire a scientist he had just fired. Ex. CC at 1, #6. Dr. Pantoja was unhappy with Dr. Carling's performance during his previous employment with ARS. Ex. CC at 2, #6; Docket 35 at 10. He was concerned about Dr. Carling's ability to timely follow directions, keep him informed, and focus on the research projects assigned to him. Ex. CC at 1, #3, #6; Docket 35 at

10. Dr. Pantoja had already had a series of conflicts with Dr. Carling and was not interested in renewing the professional relationship. Ex. CC at 2, #6.

Moreover, Dr. Carling faced stiff competition. Although Dr. Carling qualified for the position he was not the best applicant for the job because his training, experience, and research emphasis is in plant pathology. Ex. CC at 1, #4. The current state of the art for research in the fields of genetics and plant physiology is to explore plants on the molecular level. Ex. CC at 1, #5; Docket 17 at 21. All of the applicants selected for interview could do research at the molecular level, and Dr. Carling could not. Ex. CC at 1, #6. They were all either physiologists, who could study plant disease at a molecular level or geneticists, who can extract DNA. Ex. CC at 1-2, #6. Dr. Haagenson was already investigating the molecular changes associated with alfalfa and Dr. Kuersten was doing both molecular and genetic research on nematodes. Ex. CC at 1, #6. Dr. Mott was already doing genetic analysis for ARS.

The Palmer facility already had a pathologist. Ex. CC at 2, #6. Pathology, physiology and genetics are not the same scientific discipline. See Docket 17at 2. Dr. Carling was not the suited candidate for the vacancy announcement. Ex. CC at 2, #6.

Dr. Carling was not barred because of his age, but, in part, by the age of his skills. The three scientists selected for interview were all skilled in molecular research techniques and or DNA retrieval. Despite an initial attempt to upgrade his skills while on sabbatical, Dr. Carling never fully mastered molecular research. See Docket 17 at 11. He was simply not competitive and was not one of the top three applicants.

When considering the fact that Dr. Pantoja had just fired Dr. Carling from the position, the position did not solicit a pathologist, and Dr. Carling's inability to research on a molecular or genetic level, it is clear that Dr. Pantoja has a legitimate nondiscriminatory reason for not selecting Dr. Carling to be interviewed.

## CONCLUSION

Although Dr. Carling made out a prima facie case of age discrimination, the Secretary has presented a legitimate nondiscriminatory reason for its decision not to select him for interview for the physiologist/geneticist position. Dr. Pantoja had just terminated him from the position for unsatisfactory performance and other candidates had the background and research skills that matched the skills solicited in the vacancy announcement. The Secretary asks the Court to grant summary judgment in its favor.

RESPECTFULLY SUBMITTED on August 7, 2006.

> DEBORAH M. SMITH
> Acting United States Attorney
>
> s/ Susan J. Lindquist
> Assistant U. S. Attorney
> 222 West 7th Ave., #9, Rm. 253
> Anchorage, AK 99513-7567
> Phone: (907) 271-3378
> Fax: (907) 271-2344
> E-mail: susan.lindquist@usdoj.gov
> AK #9008053

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2006,
a copy of the foregoing DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
ON THE PALMER SELECTION was served
electronically on Hugh W. Fleisher.

s/ Susan J. Lindquist